No. 80–2021. UNITED CREDIT BUREAU OF AMERICA, INC. v. NATIONAL LABOR RELATIONS BOARD. C. A. 4th Cir. Certiorari denied.

JUSTICE REHNQUIST, dissenting.

In this case, the National Labor Relations Board (NLRB) found that petitioner had committed an unfair labor practice by filing a civil action for damages in state court against a discharged employee who had filed unfair labor practices charges with the NLRB. The NLRB ordered petitioner to dismiss the state-court action and reimburse the employee for all legal expenses she had incurred in defending the lawsuit. Because I believe that principles of federalism and comity should preclude the NLRB from interpreting the Na-

---

tional Labor Relations Act (NLRA) to empower the NLRB to enjoin a state-court damages action between two private entities, I dissent from the denial of certiorari.

Tonia Anderson was hired by petitioner as a probationary employee for a period of 120 days. After discussing working conditions with other employees, Anderson spoke with her supervisor, informing him of her desire for a number of benefits. After a subsequent meeting attended by Anderson and two supervisors, Anderson was informed that her employment was terminated because her attitude toward her job had changed and, therefore, she would be unable to perform her work satisfactorily.

Anderson then filed unfair labor practices charges with the NLRB, which issued a complaint against petitioner alleging violations of §§ 8(a)(1), (3) of the NLRA, 61 Stat. 140, as amended, 29 U. S. C. §§ 158(a)(1), (3). One day prior to the NLRB hearing on these charges, petitioner filed a damages action against Anderson in state court. Petitioner's complaint alleged that Anderson had contrived a fraudulent scheme in order to obtain a paid vacation with her new husband. The complaint alleged that Anderson knew that if she could provoke petitioner into discharging her, NLRB settlement procedures, following the filing of her unfair labor practice charge, would result in her reinstatement with backpay within a relatively short period of time. The NLRB subsequently issued a second complaint, alleging that petitioner violated §§ 8(a)(1), (4), 29 U. S. C. §§ 158(a)(1), (4), by initiating the damages action against Anderson.

Based solely on the complaint petitioner filed in the state-court action,[1] the NLRB concluded that petitioner violated §§ 8(a)(1), (4) because its damages action "was filed purely for purposes of retaliation to punish Anderson for seeking re-

---

[1] The complaint was the only item admitted into evidence and no testimony was elicited by any party.

dress for her discharge from the [NLRB] and to discourage other employees from ever emulating Anderson in seeking to enforce their rights."[2]  242 N. L. R. B. 921, 926 (1979).  The employer's allegations that Anderson had schemed to obtain a paid vacation were rejected by the NLRB as mere "specu-

---

[2] The NLRB purported to rely on the "Clyde Taylor" doctrine, *Clyde Taylor*, 127 N. L. R. B. 103 (1960), for the proposition that the *filing* of a lawsuit in state court may constitute an unfair labor practice and that, as such, may be enjoined by the NLRB.  In *Clyde Taylor*, however, the NLRB held only that an employer's *threat to sue* an employee for libel because of the latter's filing of unfair labor practices charges with the NLRB constituted an unfair labor practice.  *Id.*, at 108.  "By this, we do not mean to deny the existence of the normal right of all persons to resort to the civil courts to obtain an adjudication of their claims."  *Ibid.*  In accord with this caveat, the NLRB held that the employer's obtaining an injunction in state court banning peaceful picketing resorted to by a union to protest unlawful discharges did not constitute an unfair labor practice.  *Id.*, at 109.  "[T]he Board should accommodate its enforcement of the Act to the right of all persons to litigate their claims in court, rather than condemn the exercise of such a right as an unfair labor practice."  *Ibid.*

In *Retail Clerks, Local 770*, 218 N. L. R. B. 680 (1975), the NLRB modified the *Clyde Taylor* doctrine.  Although the underlying contractual provision was unlawful, the NLRB held that a union's suit to enforce an arbitration award against an employer did not constitute an unfair labor practice.  The NLRB, however, noted that the union's resort to the courts "was done in good faith to enforce a colorable contract right and was not the kind of tactic calculated to restrain employees in the exercise of rights guaranteed by the Act."  218 N. L. R. B., at 683.  In *Television Wisconsin, Inc.*, 224 N. L. R. B. 722 (1976), the NLRB found that a union's damages action against an employee seeking to enforce an unlawful union security clause in a collective-bargaining agreement constituted an unfair labor practice under §§ 8(b)(1), (2) of the NLRA, 61 Stat. 141, as amended, 29 U. S. C. §§ 158(b)(1), (2).

*Power Systems, Inc.*, 239 N. L. R. B. 445 (1978), enf. denied, 601 F. 2d 936 (CA7 1979), represents the first instance in which the NLRB has held that an employer committed an unfair labor practice by filing a civil action against an employee.  The NLRB found that the civil action was brought in order to pursue an "unlawful objective of penalizing [an employee] for filing a charge with the [NLRB]."  239 N. L. R. B., at 450.

lation."[3] The NLRB ordered petitioner to dismiss its damages action and reimburse Anderson for her legal expenses incurred in defending that suit.[4] The Court of Appeals for the Fourth Circuit enforced the NLRB's order, rejecting, *inter alia,* petitioner's contention that its state-court action was not pre-empted by federal labor law jurisdiction under *Sears, Roebuck & Co.* v. *Carpenters,* 436 U. S. 180 (1978).

By ordering petitioner to dismiss its damages action against Anderson, it is clear that the NLRB has enjoined a pending lawsuit in state court, even though the NLRB's order is addressed to petitioner and not the state court. See *Atlantic Coast Line R. Co.* v. *Locomotive Engineers,* 398 U. S. 281, 287 (1970). Since 1793, the Anti-Injunction Act has prohibited federal courts from enjoining state-court proceedings, unless the injunction may be justified by one of three specifically defined exceptions. See 28 U. S. C. § 2283. There is no reason why the concerns of federalism

---

[3] Thus, the NLRB did not restrict its inquiry to ascertaining the intent behind the suit or its potential coercive effects upon employees who wish to file charges with the NLRB. In *Power Systems, supra,* the NLRB also examined the facts underlying the complaint to determine whether the employer had a reasonable basis for filing the lawsuit. *Id.,* at 449–450. That the NLRB will now examine the merits of the civil action is made clear in *Bill Johnson's Restaurants, Inc.,* 249 N. L. R. B. 155, 164–165 (1980).

Thus, the *Clyde Taylor* doctrine has evolved from a policy of noninterference with state-court litigation to a policy of examining the merits of the litigation to determine whether that litigation constitutes an unfair labor practice. The state-court defendant need only persuade the NLRB to order the state-court plaintiff to dismiss the lawsuit. The employee need not utilize the procedures available to him in state court.

[4] In *Television Wisconsin, Inc., supra,* however, the NLRB held that it would be improper for it to order the union to reimburse the employees for the legal expenses they incurred in defending against the damages action. *Id.,* at 781. The NLRB relied upon the "American rule" against providing legal expenses to the prevailing party in a lawsuit from the loser and this Court's decision in *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S. 240 (1975).

and comity comprehended by the Anti-Injunction Act should not apply to the NLRB as well. As this Court has explained in *Locomotive Engineers*, the premise of the Act is that ours is a country of essentially two separate legal systems. 398 U. S., at 286. Each system functions independently of the other. Our lower federal courts do not have the power to review the decisions of state courts. Only this Court has such a power, and we cannot exercise that power unless some federal issue or interest is at stake. 28 U. S. C. § 1257. This dual system cannot function absent respect by each for the judicial process of the other. Federal interference with the States' judicial processes is no less contrary to the policies underlying § 2283 if that interference comes from a federal agency rather than from a federal court.

I do not doubt that § 8(a)(4) of the NLRA serves an important federal interest in ensuring employees that they may file unfair labor practice charges with the NLRB without fear of reprisal from their employer. Nevertheless, such an interest is insufficient to justify the massive intrusion into the State's judicial processes undertaken by the NLRB in this case. This Court has held that a federal court may not enjoin a pending lawsuit in state court even when "those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear." *Atlantic Coast Line R. Co.* v. *Locomotive Engineers, supra,* at 294; see *Clothing Workers* v. *Richman Brothers Co.,* 348 U. S. 511, 517 (1955).

Whatever coercive effect petitioner's state-court action may have had upon its employees' right to file charges with the NLRB, that alone is insufficient to warrant injunctive relief. The NLRB did not consider whether the state-court proceeding interfered with its ability to consider or dispose of Anderson's charges. Unlike *Capital Service, Inc.* v. *NLRB,* 347 U. S. 501 (1954), the state court in the instant case had not taken any action, let alone one that could have

interfered with the NLRB's ability to consider the merits of a matter within its exclusive jurisdiction. If the NLRB concludes that a pending state-court proceeding interferes with its jurisdiction, it may seek an injunction in a federal district court. *Id.*, at 505–506; see 29 U. S. C. § 160(j).

The proper forum to determine the merits of a suit by an employer or a union against an employee is not the NLRB, but the forum in which the suit is brought. If the lawsuit lacks merit, then the court in which the suit was brought will dismiss the suit. If the subject matter of the lawsuit is preempted by federal labor law jurisdiction, as the Court of Appeals has determined in the instant case, then the proper tribunal to make such a determination is the court in which the action was brought. If the application of state tort law interferes with the national objective that employees not be impeded in cooperating with the NLRB in enforcing the NLRA, then our decisions have held that the state court may not apply that law. See *Nash* v. *Florida Industrial Comm'n*, 389 U. S. 235, 239–240 (1967). If lower state courts err in their determination of these issues, the party claiming error may appeal through the state system and ultimately to this Court.[5]

Because I do not believe that the NLRB has the power to enjoin an action for damages in state court, I dissent from the denial of certiorari.

---

[5] In this regard, it should be noted that the state court in the instant case has dismissed petitioner's action against Anderson. App. to Pet. for Cert. A–7. The petition is silent, however, as to whether the lawsuit was dismissed because the complaint failed to state a cause of action under state law or because the subject matter of the dispute was pre-empted by federal law under *Sears, Roebuck & Co.* v. *Carpenters*, 436 U. S. 180 (1978).