BOX TREE SOUTH, LTD., Augustin Von Paege, Robert B. Tsanev, and Ricardo Colbourne, Plaintiffs, Counterclaim Defendants,

v.

Brooks BITTERMAN, Miguel Dela Rosa, and Hotel Employees and Restaurant Employees Union ("HERE") Local 100, AFL–CIO, Defendants, Counterclaim Plaintiffs.

No. 94 Civ. 6606 (JGK).

United States District Court,
S.D. New York.

Jan. 17, 1995.

Law Offices of Jacques Catafago, by Jacques Catafago, New York City, for plaintiffs.

Cohen, Weiss and Simon, by James L. Linsey, Richard A. Brook, New York City, for defendants.

## OPINION & ORDER

KOELTL, District Judge.

The plaintiffs have moved for an order remanding this action to the New York State Supreme Court, New York County and awarding costs and expenses pursuant to 28 U.S.C. § 1447(c).[1] For the reasons stated below, this Court finds that it lacks subject matter jurisdiction over the action and that an award of costs and expenses is unwarranted. Therefore, the case will be remanded to the New York State Supreme Court, New York County.

## I.

This case is the latest chapter in a bitter labor dispute between the Box Tree Restaurant and defendant Hotel Employees and Restaurant Employees Union ("HERE") Local 100, AFL–CIO ("the Union"). The complaint alleges that plaintiff Box Tree South,

Ltd. owns and operates the Box Tree Restaurant and that plaintiffs Augustin Von Paege, Robert B. Tsanev, and Ricardo Colbourne are employed by the restaurant. Defendant HERE Local 100 is a labor association and defendants allege it has been certified as the exclusive collective bargaining representative of the restaurant's employees. Defendant Brooks Bitterman is a union member and plaintiffs allege defendant Miguel Dela Rosa is also a member. Some of the restaurant's employees have been engaged in a strike since mid-December, 1993. The declaration of defendant Bitterman alleges that the strike was provoked by the restaurant's refusal to enter into a collective bargaining agreement with HERE Local 100.

On January 24, May 2, and May 4, 1994, the Union filed complaints with the National Labor Relations Board (the "NLRB") alleging that the restaurant has been engaging in unfair labor practices within the meaning of the National Labor Relations Act by, among other things, restraining and coercing employees in the exercise of rights guaranteed by the Act and by refusing to collectively bargain. These complaints have been consolidated with a complaint filed by a former restaurant employee alleging that her employment was terminated as a result of her support of the Union. A hearing before an NLRB administrative law judge on the consolidated complaints is scheduled for July 10, 1995.

The present action was filed on August 25, 1994 in the New York State Supreme Court, New York County. The complaint asserts ten causes of action. One seeks preliminary and permanent injunctive relief pursuant to New York Labor Law § 807. The other nine causes of action seek damages under the New York state common law of defamation.

New York Labor Law § 807 governs the general availability of injunctive relief in labor disputes. See N.Y.Labor Law § 807 (1994). In the Complaint's first cause of action, which arises under this statute, the

1. The statute, applicable to any case removed from state court, provides that:
 If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An or-

der remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal....

28 U.S.C. § 1447(c) (1994).

plaintiffs allege that the Union and defendant Dela Rosa have committed multiple acts of assault and battery and other acts of threats and violence. To prevent such acts, the plaintiffs seek injunctive relief prohibiting the defendants from: using violence, coercion, and intimidation; picketing residences; making false statements; interfering with ingress or egress to the restaurant; and congregating at the restaurant for any purpose other than to engage in court authorized picketing.

The plaintiffs' second through tenth causes of action allege instances in which the Union and on occasion defendant Bitterman have maliciously published various written statements concerning plaintiff Von Paege that are false, defamatory, and libelous, and that the Union and Bitterman knew or should have known to be false. The plaintiffs claim that Von Paege's reputation in the community and his profession have been harmed by these statements. All of the allegedly libelous and defamatory statements involve, among other things, allegations that Von Paege has been engaged in illegal activity, including activities violating federal and state labor laws. The defendants' opposition to the plaintiffs' motion to remand the case to state court places particular reliance on the fact that the second, third, and fourth causes of action allege that the Union and Bitterman sent letters to three different individuals asserting that: " 'From the outset, [Augustin Von Paege] has violated Federal laws to deprive the workers of their legal rights.' " Complaint ¶¶ 35, 41, 47.

Under 28 U.S.C. § 1441, removal of a state court action to a federal district court is proper whenever the federal court has original jurisdiction over the action.[2] The parties agree that the present action is not within the diversity jurisdiction of the Court. The sole question at issue on the plaintiffs' motion to remand is whether the Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 which provides that:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331 (1994).

The major thrust of the defendants' argument for federal jurisdiction is that the defamation claims in the complaint are necessarily preempted by federal labor law in such a manner that the doctrine of complete preemption is applicable and therefore the claims necessarily arise under federal law within the meaning of 28 U.S.C. § 1331 although the plaintiffs have not pleaded a federal cause of action. As explained below, the plaintiffs' claims do not arise under federal labor laws and the defendants have overstated the breadth and effect of the preemption of state law by federal labor law.

## II.

The outer boundaries of § 1331's "arising under" jurisdiction are not always precise, but are anchored in the "well-pleaded complaint" rule. In addressing their imprecision in *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Supreme Court explained:

> One powerful doctrine has emerged, however—the "well-pleaded complaint" rule—which as a practical matter severely limits the number of cases in which state law "creates the cause of action" that may be initiated in or removed to federal district court . . .
>
> > "[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v.*

2. The removal statute provides that:
Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .
28 U.S.C. § 1441(a) (1994).

*Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914)....

For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case "arises under" federal law. "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

*Id.* at 9–11, 103 S.Ct. at 2846–47.

In *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754 (2d Cir.), *cert. denied* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986), the Court of Appeals for the Second Circuit, citing *Franchise Tax Board,* restated the well-pleaded complaint rule and reiterated that it provides the general principle for determining the removability of actions allegedly arising under the Constitution or laws of the United States: "Normally, removal based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint." *Sarkisian,* 794 F.2d at 758. *See also, Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 27 (2d Cir. 1988).

■ Under the rule, the determination of whether an action arises under the laws of the United States is made by examining the claims in the complaint rather than the pleaded facts underlying them. Thus the rule makes the plaintiff "master of the complaint," preventing a court from inferring from a state law complaint a basis for federal jurisdiction even though the facts pleaded are sufficient to sustain a federal claim that was not pleaded. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Derrico,* 844 F.2d at 27.

■ The existence of a federal defense to a state law claim is also not generally a basis for removal. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 8 (2d Cir.1992). Some of the defendants' arguments have assumed in-

correctly that if the defendants can prove as a defense that the plaintiffs' common law defamation claims are preempted by federal labor law, then this Court has federal question jurisdiction. However, as the Supreme Court explained in *Franchise Tax Board:*

> [S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

*Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. at 2848. *See also, Caterpillar,* 482 U.S. at 398, 107 S.Ct. at 2432 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court") (footnote omitted).

### III.

■ The well-pleaded complaint rule for determining federal question jurisdiction is limited by two established exceptions: the artful pleading exception and an exception based on the involvement of substantial federal questions in state law claims. The artful pleading exception was precisely defined by the Court of Appeals for the Second Circuit in *Sarkisian.* There the court stated that there are two versions of the artful pleading exception, a classic version and a more recent version derived from *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

The court of appeals explained that the traditional form of the artful pleading doctrine allows for removal of a state law claim only if the claim is preempted, or a state remedy is not available for other reasons, and the claim, if well-pleaded, would necessarily be a federal claim. *Sarkisian,* 794 F.2d at 758; *see also, Nordlicht v. New York Tel. Co.,* 799 F.2d 859, 862 (2d Cir.1986), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987). The court found that when the only possible remedy available to a plaintiff is a federal one, removal does not prevent the plaintiff from being master of the complaint, because the plaintiff simply has no

available state law claim to prefer over a federal one. *Sarkisian,* 794 F.2d at 758. The court emphasized that if no federal claim is available on the facts pleaded in the complaint, the mere preemption of a state law claim is insufficient to warrant removal under the exception. *Id.* at 758. In that situation, there can be no removal jurisdiction, because there is simply no claim, either state or federal, to remove: "The plaintiff has no available bodies of law from which to choose." *Id.* (citations omitted).

In *Sarkisian,* the court also observed that the classic application of the traditional form of the artful pleading doctrine is found in the context of complete preemption. As explained more fully in the following section, a state law claim is completely preempted when federal law not only preempts the state law upon which the claim is founded, but also recharacterizes the purported state law claim as a federal one. In this situation, the requirements of the traditional form of the artful pleading exception are fulfilled.

The more recent form of the artful pleading exception declared in *Sarkisian* and derived from *Federated Dept. Stores Inc. v. Moitie* is not applicable to the present case. In a footnote in *Federated Stores,* the Supreme Court summarily upheld the federal question removal of one of the cases before it which contained only state law causes of action. *Federated Stores,* 452 U.S. at 397 n. 2, 101 S.Ct. at 2427 n. 2. The Court relied on a very general statement of the artful pleading exception, that a court will not allow a plaintiff to foreclose a defendant's right to a federal forum by the use of "artful pleading." In *Sarkisian,* the court carefully read this general statement of the artful pleading exception in *Federated Stores* as limited by the facts of that case. The court of appeals found that the exception in *Federated Stores* should authorize federal jurisdiction of a federal claim where: 1) the elements of the state law claim are "virtually identical" to those of a claim expressly grounded on feder-

al law; and 2) the plaintiff has previously elected to litigate the controversy in federal court. *Id.,* 794 F.2d at 760–61. The court of appeals concluded, "This interpretation of *Federated Stores* limits but does not abolish the master-of-the-complaint rule and has found favor elsewhere." *Id.* at 761. This version of the artful pleading exception to the well-pleaded complaint rule has no application to the present case, because the defendants have not alleged that the plaintiffs have previously sought to litigate this controversy in federal court.

**IV.**

 The defendants have argued that the plaintiffs' defamation claims are completely preempted by federal labor laws and are thus within the Court's federal question jurisdiction under the traditional form of the artful pleading exception to the well pleaded complaint rule. The defendants are correct that if a state law claim is completely preempted, there is jurisdiction under the artful pleading exception to the well-pleaded complaint rule, because no state remedy is available and the plaintiffs have pleaded what necessarily must be federal claims: "[I]f Congress completely preempts an area of state law, any 'complaint raising this select group of claims is necessarily federal in character.'" *Dunham–Bush,* 959 F.2d at 8, *quoting Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *see also Franchise Tax Board,* 463 U.S. at 24, 103 S.Ct. at 2854. Whether Congress completely preempted an area of state law is a question of statutory interpretation and congressional intent.

 In *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Supreme Court held that Section 301(a) of the Labor Management Relations Act ("LMRA")[3] completely preempts state causes of action for alleged breaches of collective bargaining agreements. There-

---

**3.** Section 301(a) of the Labor Management Relations Act provides that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between

any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1994).

fore, in that case the defendant union and its members properly removed the employer's state court action which alleged a breach of a "no-strike" clause in a collective bargaining agreement. By its complete preemption, § 301 federalizes all such claims. A claim for a breach of a collective bargaining agreement is a federal claim even if it is one on which no relief may be granted. *Id.* 390 U.S. at 561, 88 S.Ct. at 1237–38 ("The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy"); *see also, Caterpillar*, 482 U.S. at 391 n. 4, 107 S.Ct. at 2429 n. 4.

In *Franchise Tax Board*, the Court similarly described the power of "complete preemption," which the Court found in *Avco*, as a power that both preempts a state cause of action and federalizes any claim brought within the purview of the statute regardless of whether the statute is explicitly invoked:

> The necessary ground of decision [in *Avco* ] was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action *completely preempts* a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

*Franchise Tax Board*, 463 U.S. at 23–24, 103 S.Ct. at 2853–54 (footnote omitted) (emphasis added); *see also, Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 ("On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule'" (quoting

*Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)) (footnote omitted)).

In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court found that § 502(f) of the Employee Retirement Income Security Act of 1974 (ERISA) possesses the same power of complete preemption as § 301 of the LMRA, thus providing federal question removal jurisdiction over state law actions seeking the forms of relief specified in § 502(a) of ERISA. The Court described the question presented to it as whether "the *Avco* principle can be extended to statutes other than the LMRA in order to recharacterize a state law complaint displaced by § 502(a)(1)(B) as an action arising under federal law." *Metropolitan Life*, 481 U.S. at 64, 107 S.Ct. at 1547; *see also, Dunham–Bush*, 959 F.2d at 10 ("The civil enforcement provisions of ERISA operate to recharacterize state law claims for benefits as actions arising under federal law. Although appellant's suit is preempted, it may be removed only if it comes within the scope of ERISA's civil enforcement provisions") (citing *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989); *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1547)). The Court held that complete preemption depends upon congressional intent to federalize common law claims:

> Even with a provision such as § 502(a)(1)(B) that lies at the heart of a statute with the unique pre-emptive force of ERISA, however, we would be reluctant to find that extraordinary pre-emptive power, such as has been found with respect to § 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. But the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA.... [4]

4. The Court further explained the similarity between § 301(a) of the LMRA and § 502(f) of ERISA:

Section 502(f) says:

"The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief, provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f). *Cf.* § 301(a) of the LMRA, 29 U.S.C. § 185(a). The presumption that similar language in two labor law statutes has a similar meaning is fully

[T]he touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court. Since we have found Taylor's cause of action to be within the scope of § 502(a), we must honor that intent whether pre-emption was obvious or not at the time this suit was filed.

*Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. at 1547–48 (citations omitted); *see also Id.* at 68, 107 S.Ct. at 1548 (Brennan, J., concurring) ("In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court").

■■■ In this case, the defendants have suggested that § 301 of the LMRA completely preempts the plaintiffs' defamation claims and therefore provides a basis for removal. However, the preemptive force of § 301 does not in any way control the present case. Section 301 gives the district courts jurisdiction over suits for violation of contracts between employers and labor organizations representing employees in industries affecting commerce within the meaning of the Act. In the present controversy, there is no employer-union agreement to be interpreted. Indeed, it was the restaurant's alleged refusal to enter into such an agreement that sparked the strike from which the present controversy arises. The force of § 301's complete preemption, which federalizes state claims and thus permits removal, arises only when a claim requires a collective bargaining agreement to be interpreted or otherwise implicates one. *See, e.g., DeCoe v. General Motors Corp.,* 32 F.3d 212, 216–17 (6th Cir. 1994) (holding state law defamation claims preempted by § 301, because they would require interpretation of a collective bargaining

agreement); *Shane v. Greyhound Lines, Inc.,* 868 F.2d 1057, 1063 (9th Cir.1989) (holding state law defamation claim preempted by § 301, because "inextricably intertwined" with issue of whether appellants were wrongfully discharged pursuant to a collective bargaining agreement).

■■■ It is well-settled that in the absence of a collective bargaining agreement, a plaintiffs' claims cannot be preempted by § 301. *See Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988) ("[W]e hold that an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement"); *Caterpillar,* 482 U.S. at 395, 107 S.Ct. at 2431 (1987) ("As the Court has stated, 'it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract'" (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 212, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985))); *Parke v. Bethenergy Mines, Inc.,* 732 F.Supp. 587, 590 (W.D.Pa.1990) ("The LMRA does not preempt, however, all defamation by an employer of an employee, at least where the question of defamation does not require reference to the collective bargaining agreement" (citing *Lingle* )); *Gregory v. Simon Bros., Inc.,* 640 F.Supp. 1252, 1255 (N.D.Ind.1986).

## V.

■■■ In addition to relying on the preemptive force of § 301 of the LMRA to support their claim that this Court has jurisdiction of this case, the defendants argue that, in general, libel claims arising from or intertwined with labor disputes are preempted by federal labor law. While the Supreme Court has found that federal labor law provides limited preemption of state law libel claims arising in labor disputes, that preemption is not complete preemption, which would federalize causes of action and thus create federal question removal jurisdiction. Only complete preemption provides a ground for

---

confirmed by the legislative history of ERISA's civil enforcement provisions.

*Metropolitan Life,* 481 U.S. at 65, 107 S.Ct. at 1547.

removal of a state law cause of action. Common preemption is a defense to a state law cause of action and therefore, under the well-pleaded complaint rule, it does not provide a basis for removal jurisdiction.

In *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the Supreme Court considered the question of the preemption of state defamation law in the context of actions alleging defamations published during union organizing campaigns. The Court held that the National Labor Relations Act does not preempt all state causes of action for alleged acts of defamation arising in labor disputes, but that it does preempt a state's defamation law to the extent that state law would otherwise provide a remedy in such cases when malice and actual injury are not proven. *See Linn*, 383 U.S. at 64–65, 86 S.Ct. at 663–64. The Court held that the defamation standards declared in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), as appropriate to defamation claims by public officials based on criticism of their official conduct are also to be applied to defamation actions arising from labor disputes. The Court explained that this compromise between giving free reign to state defamation law in the area of labor disputes and requiring its total preemption is necessary to recognize legitimate state interests and to prevent interference with the effective administration of national labor policy. *Linn*, 383 U.S. at 64–65, 86 S.Ct. at 663–64.

On the one hand, the Court found that total preemption of state defamation law in the context of labor disputes was unwarranted. The Court noted that in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) it had explained that, contrary to the general rule of preemption declared in that case, preemptive congressional intent would not be inferred when conduct subject to state jurisdiction appeared to be subject to §§ 7 or 8 of the NLRA[5] if the activity regulated was merely a peripheral concern of federal labor law or if " 'the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.' " *Id.*, 383 U.S. at 59, 86 S.Ct. at 661 (quoting *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779). In *Linn*, the Court, following *Garmon*, concluded that the exercise of state jurisdiction over defamation claims arising in labor disputes:

> [W]ould be a 'merely peripheral concern of the Labor Management Relations Act,' provided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false. Moreover, we believe that 'an overriding state interest' in protecting its residents from malicious libels should be recognized in these circumstances.... We ... conclude that a State's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon*.

*Linn*, 383 U.S. at 61–62, 86 S.Ct. at 662. The Court found additional support for allowance of state causes of action to redress malicious libel in the fact that malicious publication of libelous statements is not in and of itself an unfair labor practice within the meaning of § 8 of the NLRA, because the Board looks to the coercive or misleading nature of malicious statements and not to their defamatory character in determining whether they constitute an unfair labor practice. *Id.* at 63, 86 S.Ct. at 663. The Court also observed that, "The Board can award no damages, impose no penalty, or give any other relief to the defamed individual." *Id.*

On the other hand, the Court found that allowing state defamation law free reign in the area of labor disputes was as unwarranted as requiring its total preemption:

**5.** Section 7 of the NLRA declares collective organization and bargaining rights. *See* 29 U.S.C. § 157 (1994). Section 8(a) defines employer conduct constituting unfair labor practices; section 8(b) defines labor association conduct constituting unfair labor practices; section 8(c) provides that the expression of views shall not be an unfair labor practice in the absence of threat or reprisal or force or promise or benefit; and section 8(d) defines the mutual obligation of employers and employee representatives to bargain collectively. *See* 29 U.S.C. § 158 (1994).

[I]t has been insisted that not only would the threat of state libel suits dampen the ardor of labor debate and truncate the free discussion envisioned by the Act, but that such suits might be used as weapons of economic coercion. Moreover, in view of the propensity of juries to award excessive damages for defamation, the availability of libel actions may pose a threat to the stability of labor unions and smaller employers.

*Id.* at 64, 86 S.Ct. at 664. Having weighed all of the foregoing considerations in light of its prior holding in *Garmon,* the Court found that application of the *New York Times Co. v. Sullivan* standards to state law defamation claims arising in labor disputes provided the appropriate accommodation of state and national policies.

It is plain that the limited preemption of state defamation laws declared in *Linn* does not involve complete preemption. The defendants can argue the scope of preemption as a defense to the state causes of action in state court. The defendants argument that *Linn* federalized defamation claims arising in labor disputes by declaring a federal law of defamation for such claims is simply wrong.

If *Linn* had declared a comprehensive federal law of defamation applicable to all defamation claims arising from labor disputes, then there would be a question as to whether a claim that failed explicitly to invoke or comply with this law was nonetheless a federal claim. However, *Linn* did no such thing any more than *New York Times Co. v. Sullivan* turned state libel actions by public officials into federal causes of action. *Linn* did not federalize state defamation law, but

preempted it to a limited degree: "Construing the Act to permit recovery of damages in a *state cause of action* only for defamatory statements published with knowledge of their falsity or with reckless disregard of whether they were true or false guards against abuse of libel actions and unwarranted intrusion upon free discussion envisioned by the Act." *Id.* at 65, 86 S.Ct. at 664 (emphasis added). *See also, Old Dominion Branch No. 496, National Ass'n of Letter Carriers,* 418 U.S. 264, 272–73, 94 S.Ct. 2770, 2775, 41 L.Ed.2d 745 (1974) (observing that in *Linn,* the Court "found it necessary to impose substantive restrictions on the *state libel laws*" and "held that *libel actions under state law* were pre-empted by the federal labor laws to the extent that the State sought to make actionable defamatory statements in labor disputes which were published without knowledge of their falsity or reckless disregard for the truth" (emphasis added)). There is no reason, based on *Linn,* to take the present case outside the normal rule that a preemption defense does not create a basis for removal of a state claim to federal court. Rather, whatever preemption defense there is can be asserted as a defense in state court.

The defendants cite *United Credit Bureau v. NLRB,* 643 F.2d 1017 (4th Cir.), *cert. denied* 454 U.S. 994, 102 S.Ct. 539, 70 L.Ed.2d 404 (1981), for the proposition that the preemptive effect of the NLRA is to be determined on a case by case analysis of whether the facts of a particular case are sufficiently intertwined with federal labor policies to warrant preemption. The defendants read too much into *United Credit Bureau,*[6] which held that an employer's suit

---

**6.** In *United Credit Bureau,* the court of appeals applied the *Garmon* doctrine, as modified by *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), to the question of whether an employer's civil action against an employee sounding in abuse of process and factually based upon the employee's filing of unfair labor practice charges was preempted by the NLRB's jurisdiction. In *Sears,* the Court modified *Garmon's* holding that the NLRA, with few exceptions, preempts state regulation of all conduct arguably prohibited by § 8 of the NLRA, holding that state adjudications of claims arising from arguably prohibited conduct are preempted by the NLRB's generally exclusive jurisdiction only if the contro-

versy presented to the state court is identical to that which otherwise would have been presented to the NLRB. *Sears,* 436 U.S. at 197, 98 S.Ct. at 1757. In *United Credit Bureau* the court of appeals concluded that employer actions sounding in abuse of process for allegedly wrongful filing of unfair labor practice charges by employees with the NLRB are, under *Sears,* sufficiently identical to the employee's NLRB claims to warrant preemption. This conclusion was based on the "intertwined nature" of such actions and the NLRB claims. *United Credit Bureau,* 643 F.2d at 1026. In *United Credit Bureau* the court of appeals did not hold that a civil action founded on state law is preempted whenever it is sufficiently "intertwined" with a claim presented to the

analogous to a claim for abuse of process against an employee in retaliation for charges filed with the NLRB was preempted. In *Linn* the Supreme Court made clear that the balance that it struck between state and national interests in the context of defamation claims arising from labor disputes was not to be disturbed by a case by case analysis, but only by a future opinion of the Court, if at all: "[I]f experience shows that a greater curtailment [of state law], even a total one, should be necessary to prevent impairment of that policy [national labor policy], the Court will be free to reconsider today's holding." *Linn*, 383 U.S. at 67, 86 S.Ct. at 665. Moreover, even if the plaintiff's defamation claims were preempted by the NLRA, the Court would not have federal question removal jurisdiction over this action in the absence of complete preemption. *Caterpillar*, 482 U.S. 386, 398, 107 S.Ct. 2425, 2432 (1987) ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court" (footnote omitted)).

### VI.

■ The defendants have also argued the plaintiffs' second, third, and fourth causes of action arise under the laws of the United States, specifically the National Labor Relations Act, simply because federal law must be interpreted in order to determine the truth of the allegedly defamatory statement that " 'From the outset, [Augustin Von Paege] has violated Federal laws to deprive the workers of their legal rights.' " Complaint ¶¶ 35, 41, 47.

Justice Holmes' maxim that, "A suit arises under the law that creates the cause of action," *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (Holmes, J.), has been applied in the well-pleaded complaint rule. Nonetheless, the Court's holding in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), that there is federal question jurisdiction over a complaint when "the right to relief depends upon the construction or application of the Constitution or laws of the United States," remains good law. *Id.* at 199, 41 S.Ct. at 245; *see Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808–09 & n. 5, 106 S.Ct. 3229, 3232 & n. 5, 92 L.Ed.2d 650 (1986) (observing that *Smith* remains the most frequently cited case for the proposition that federal question jurisdiction may exist when the vindication of a state created right depends on construction of federal law); *Id.* at 820, 106 S.Ct. at 3238 (Brennan, J., dissenting) (collecting cases citing *Smith* with approval); *Sarkisian*, 794 F.2d at 762.

■ The general applicability of *Smith*'s holding has not been defined in precise terms. Rather, when faced with a situation requiring construction of federal law to resolve a state law claim, the courts have balanced the particular state and federal interests at hand in order to determine whether federal jurisdiction is warranted: [7]

> This Court has had occasion to point out how futile is the attempt to define a 'cause of action' without reference to the context. To define broadly and in the abstract 'a case arising under the Constitution or laws of the United States' has hazards of a kindred order. What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations

NLRB. Rather, it followed *Sears* and held that an action sounding in abuse of process based on allegations of wrongful filing of an unfair labor practice claim with the NLRB necessarily "involves the same controversy" as the NLRB claim. *Id.* In addition, in *United Credit Bureau*, the court of appeals specifically noted *Linn* as a well recognized exception to a preemption rule that required state jurisdiction to yield. *Id.* at 1025 n. 13.

7. "Arising under" jurisdiction within the meaning of 28 U.S.C. § 1331 is narrower than "arising under" jurisdiction within the meaning of Article III of the Constitution, because Congress, in adopting § 1331, did not exercise the full extent of its constitutional power. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494–95, 103 S.Ct. 1962, 1971–72, 76 L.Ed.2d 81 (1983) (Burger, C.J.); *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 825–26 (2d Cir.1964) (Friendly, J.), *cert. denied* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379 & n. 51, 79 S.Ct. 468, 483–84 & n. 51, 3 L.Ed.2d 368 (1959).

which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside.... To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.

*Gully v. First Nat'l Bank,* 299 U.S. 109, 117–18, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936) (Cardozo, J.) (citations omitted). *See also, Merrell Dow,* 478 U.S. at 813–14, 106 S.Ct. at 3234–35; *Stone & Webster Eng'g. Corp. v. Ilsley,* 690 F.2d 323, 328 (2d Cir.1982) ("[W]e are satisfied that this case meets the many 'arising under' tests for federal jurisdiction, not the least of which is that pragmatic considerations make it eminently logical and sensible that the forum for such a dispute be the federal district court" (footnote omitted)), *aff'd sub nom Arcudi v. Stone & Webster Eng'g Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983). In *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Court made a distinction of the type referred to by Justice Cardozo when it held that:

> A complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*Merrell Dow,* 478 U.S. at 817, 106 S.Ct. at 3237.

■ In this case, as in *Merrell Dow,* the cause of action is created by state law and federal law is referred to as part of the state law claim. Under New York State law, the elements of libel are: "a false and defamatory statement of and concerning plaintiff; publication to a third party; fault, the degree of which depends upon the status of the libelled party; and special harm or per se actionability." *Church of Scientology Int'l v.*

*Eli Lilly & Co.,* 778 F.Supp. 661, 666 (S.D.N.Y.1991) (citation omitted). The only federal aspect of this cause of action, apart from the limitations imposed by *Linn,* is the allegation that the plaintiff violated federal labor laws—a question the court or jury might never reach if the other elements of the state cause of action are not satisfied or *Linn*'s requirement of actual malice in the *Sullivan* sense is not established. *See also, West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.,* 815 F.2d 188, 196 (2d Cir.) (interpreting *Merrell Dow* as holding that the federal issue involved in the case was not sufficiently substantial to invoke federal question jurisdiction, because "the federal statute was merely incorporated by reference as a standard of conduct in a state negligence action"), *cert. denied* 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 107 *and* 484 U.S. 871, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987).

Of particular relevance to the present case is the Supreme Court's suggestion in *Merrell Dow* that there is no federal question jurisdiction over a state law claim involving alleged violations of the National Labor Relations Act, because Congress has intended, in general, for such violations to be resolved by the NLRB rather than the federal courts. In *Merrell Dow,* Merrell Dow Pharmaceuticals, Inc., the petitioner-defendant, argued for removal jurisdiction on the ground that there was a powerful federal interest in the nationally uniform interpretation of the federal statute at issue, the Federal Food, Drug, and Cosmetic Act. In reviewing this argument, the Court observed that even if the district court did not have original jurisdiction over the question of federal law involved in the state law claim, the Supreme Court retained ultimate power to review the federal issue on appeal. *Merrell Dow,* 478 U.S. at 816, 106 S.Ct. at 3236. The Court also concluded that the federal interest appealed to by the petitioner would be vindicated by preemption of state court jurisdiction, that federal question jurisdiction was therefore not necessary, and that the petitioner should have been arguing only for preemption. The Court noted that in the area of labor law its preemption decisions in *Garmon* and its progeny have rested on a determination that

the NLRB is generally to exercise exclusive jurisdiction in the labor area. *Id.*, 478 U.S. at 816 n. 13, 106 S.Ct. at 3236 n. 13. The Court thus suggested that when a national labor law must be interpreted in a state law action, preemption under federal labor law can be raised as a defense in the action, but that it is not necessary to imply federal question jurisdiction to protect the federal interests involved.

On a more general level, the Supreme Court made it clear in *Merrell Dow* that before pushing to the outer reaches of "arising under" jurisdiction within the meaning of 28 U.S.C. § 1331, "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.* at 810, 106 S.Ct. at 3233. The Court thus reiterated Justice Cardozo's finding in *Gully* that the question of when federal question jurisdiction exists over a state law claim involving federal issues is one that calls upon a court to exercise prudential judgment. In *Merrell Dow,* the Court explained that an important factor in making such judgments is the extent to which state law issues predominate over issues of federal law:

> The importance of the nature of the federal issue in federal-question jurisdiction is highlighted by the fact that, despite the usual reliability of the Holmes test as an inclusionary principle, this Court has sometimes found that formally federal causes of action were not properly brought under federal-question jurisdiction because of the overwhelming predominance of state-law issues.

*Id.* at 814 n. 12, 106 S.Ct. at 3235 n. 12 (citations omitted).

State law issues clearly predominate in this case, because the plaintiffs do not seek to assert any federal right, most of the elements of the claims will be determined without an appeal to federal law, and state law provides the elements of the cause of action and the remedies as well as the defenses, apart from the requirements imposed by *Linn* and by other constitutional defenses. *See also, Cox v. Int'l Union of Operating Eng'rs,* 672 F.2d 421, 423 (5th Cir.1982) ("This is a simple defamation suit. It is neither a suit for violation of a contract between an employer and a labor organization, 29 U.S.C. § 185 (1976), nor for violation of the rights of members of labor organizations, id. §§ 411–412, 529, nor for deprivation of union members' rights by force, id. § 530. The fact that the alleged defamation arose out of union affairs or that, in the course of trial or defense, issues of union members' rights may arise does not convert it into a 'federal question' case."); *WANV, Inc. v. Augusta County Broadcasting Corp.,* 414 F.Supp. 23, 25 (W.D.Va.1976) (holding that there was no federal question jurisdiction over a libel claim alleging a violation of federal law, because the meaning of the law was clear and undisputed, and holding *Smith* inapplicable, because "[T]o allow every such individual [who is accused of violating federal law and is seeking libel damages for such an accusation] to bring claims of this sort in a federal court would grossly abuse the principle of federal question jurisdiction which forbids federal courts to adjudicate lawsuits involving issues of state law only.")

Another factor weighing against federal question jurisdiction in this case is the fact that the balance of federal and state interests in defamation claims arising in the context of labor disputes was already struck by the Supreme Court in *Linn* and the Court did not preempt state defamation law or federalize it. The Court there determined to allow state claims to proceed, balanced by the defense which could be asserted that the defamatory statements were only actionable if knowingly false or made with reckless disregard for their truth or falsity. The Court stressed the overriding interest of a state in protecting its residents from malicious libels. An alleged violation of federal law was also part of the allegedly defamatory statement in *Linn.* The allegedly defamatory leaflet stated, " 'The men in Saginaw were deprived of their right to vote in three N.L.R.B. elections. Their names were not summitted (sic).' " *Linn,* 383 U.S. at 56, 86 S.Ct. at 660. Federal jurisdiction in *Linn* was founded on diversity of citizenship, but there is no doubt that in striking the balance of federal and state interests in *Linn,* the Supreme Court

did not intend to federalize the defamation claims.

Considering the foregoing factors and the Supreme Court's decisions in *Linn* and *Merrell Dow*, this case is not one in which the involvement of issues requiring the construction of federal law is such that the claims should be considered to arise under federal law within the meaning of 28 U.S.C. § 1331.

## VII.

■ The plaintiffs request for costs and expenses and other relief pursuant to 28 U.S.C. § 1447(c) on the basis that this action was improperly removed is denied. The interrelationships among the doctrines of preemption, complete preemption and removal are complex, and the defendants' papers are straightforward efforts to deal with these issues. An award of costs and expenses would be inappropriate under all of the circumstances. *See Morgan Guaranty Co. v. Republic of Palau,* 971 F.2d 917, 924 (2d Cir.1992) (holding that bad faith is not necessary for an award of costs and expenses under § 1447(c) and that the statute "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees"). The application for costs and expenses is denied.

## VIII.

For the foregoing reasons, this Court lacks subject matter jurisdiction over this action. The case is remanded pursuant to 28 U.S.C. § 1447(c) to the New York State Supreme Court, New York County.

**SO ORDERED.**